UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD DEAN ROBERTS, JR.,

               Plaintiff,                  CIVIL ACTION NO. 09-11066

       v.                           DISTRICT JUDGE AVERN COHN

LOUISIANA HOMES, LILLIA         MAGISTRATE JUDGE VIRGINIA MORGAN
DODSON, ELISA DODSON,
ACCIDENT FUND INSURANCE
COMPANY OF AMERICA, ABBY
BARR, DONNA BASHORE, LAURA
DeLUCA, and JOHN DOE,

               Defendants.[1]
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This is an action filed *in pro per* in which plaintiff alleges that defendants deprived him

of access to the courts and violated the Family Medical Leave Act, 42 U.S.C. § 12112

("FMLA").  The matter comes before the court now on defendant Accident Fund Insurance

Company of America's Motion to Dismiss and/or for Summary Judgment (D/E #25) and

defendants Barr, Bashore and DeLuca's Motion to Dismiss (D/E #68).  For the reasons discussed

---

      [1]This court would note that, on July 28, 2009, the Honorable Avern Cohn issued an order
granting the parties' stipulation to the dismissal of defendants Louisiana Homes, Lillia Dodson,
and Elisa Dodson (D/E #78).

-1-

below, this court recommends that defendants' motions be **GRANTED** and that plaintiff's remaining claims be dismissed.[2]

## II. Background

### A. Second Amended Complaint

On May 7, 2009, plaintiff filed an "Second Amended Complaint" against defendants (D/E #20). In Count I of that second amended complaint, plaintiff identified himself as an employee of defendant Louisiana Homes and Louisiana Homes as a non-profit corporation located in the city of Detroit, Michigan. (Second Amended Complaint, ¶ 2) Plaintiff also identified defendant Lillia Dodson as the C.E.O. of Louisiana Homes and defendant Elise as the General Manger of Louisiana Homes. (Second Amended Complaint, ¶¶ 3-4) Plaintiff further identified defendant Accident Fund Insurance Company of America ("Accident Fund") as a corporation located in the city of Lansing, Michigan, and defendants Barr, Bashore, DeLuca and Doe as employees of Accident Fund.

With respect to his claims, plaintiff first alleges, in Count II of his second amended complaint, a violation of the FMLA. According to plaintiff, on December 15, 2005, he sustained a gunshot injury while being employed by Louisiana Homes. (Second Amended Complaint, ¶ 14) Plaintiff also alleges that, on December 18, 2005, he contacted Lillia Dodson about obtaining assistance with his medical expenses and she responded that Louisiana Homes was not responsible for his injury or expenses, but she would address plaintiff's medical claims with

---

[2]This court would note that plaintiff also has a claim against a John Doe defendant who has not yet be identified or served. While that defendant has not been served and, consequently, is not part of any dispositive motion, the claims against the John Doe defendant should be dismissed *sua sponte* for the same reasons discussed below.

Accident Fund. (Second Amended Complaint, ¶ 15)  Plaintiff further alleges that, on February

13, 2006, he alerted both Lillia Dodson and Elisa Dodson that he was medically cleared to return

to work on February 17, 2006, but they both refused to place him on the work schedule.  (Second

Amended Complaint, ¶ 17)

      According to plaintiff's complaint, he returned to work at Louisiana Homes on March 15,

2006, but his position was changed and Elisa Dodson reduced plaintiff's hours of employment

by 25%.  (Second Amended Complaint, ¶ 19)  Plaintiff also alleges that, on April 5, 2006, he

informed Lillia Dodson and Elisa Dodson that his return had been premature and he then

requested a medical leave of absence.  (Second Amended Complaint, ¶ 20)  Plaintiff also states

that, while neither Lillia Dodson nor Elisa opposed the leave, they both failed to inform plaintiff

whether his leave was designated under FMLA as required.  (Second Amended Complaint, ¶ 20)

      Plaintiff further asserts that, on April 13, 2006, he notified Elisa Dodson that the required

additional time off work because of his medical needs and that she then terminated his

employment in violation of the FMLA.  (Second Amended Complaint, ¶ 21)  According to

plaintiff, as of that date, he was eligible for approximately twelve weeks of leave under the

FMLA, but Lillia Dodson and Elisa Dodson, through Accident Fund, failed to grant such leave.

(Second Amended Complaint, ¶ 22)[3]

      In Count III of his second amended complaint, plaintiff alleges that defendants violated

plaintiff's constitutional right to access the courts.  According to plaintiff, he filed a worker's

---

[3]While not clearly designated as an FMLA claim, plaintiff also alleges in Count II that
Accident Fund, through its agents DeLuca, Bashore, Barr and John Doe, violated plaintiff's right to
receive medical coverage by arbitrarily withholding the benefits plaintiff was entitled to under the
contract between Accident Fund and Louisiana Homes.  (Second Amended Complaint, ¶ 21)

compensation claim on January 25, 2006 (Second Amended Complaint, ¶ 16) and, on that same

day, Barr and Lillia Dodson prepared a false "Employer's Basic Report of Injury" form so that

Louisiana Homes and Accident Fund could impeded plaintiff's access to the worker's

compensation court (Second Amended Complaint, ¶ 29)  Plaintiff also alleges that, on February

6, 2006, Bashore and Lillia Dodson filed a fraudulent "Notice of Dispute" with respect to

plaintiff's worker compensation claim with the specific intent to withhold, impair or delay the

award of benefits to plaintiff.  (Second Amended Complaint, ¶ 30)  Plaintiff's second amended

complaint further asserts that Accident Fund acted in a concerted effort with Louisiana Homes in

order to hinder and impede plaintiff's right to access the worker's compensation court.  (Second

Amended Complaint, ¶ 40)

Plaintiff also alleges that he applied for unemployment benefits on February 16, 2006

(Second Amended Complaint, ¶ 18) and that Lillia Dodson and Elisa Dodson, acting on behalf of

Louisiana Holmes, repeatedly executed correspondences and documents designed to interfere

with plaintiff's attempt to access the courts and secure unemployment benefits (Second

Amended Complaint, ¶¶ 31-39)

As relief, plaintiff seeks $150,000.00 in punitive damages from each individual defendant

and $200,000.00 each from Louisiana Homes and Accident Fund.  (Second Amended Complaint,

p. 9)


**B. Dismissal of Defendants Louisiana Homes, Lillia Dodson, and Elisa Dodson**

On July 27, 2009, the parties stipulated to the dismissal of defendants Louisiana Homes, Lillia Dodson, and Elisa Dodson with prejudice (D/E #75).  On July 28, 2009, Judge Cohn issued an order granting the parties' stipulation to dismiss Louisiana Homes, Lillia Dodson, and Elisa Dodson with prejudice (D/E #78).

### C. Pending Motions

On May 15, 2009, Accident Fund filed a Motion to Dismiss and/or For Summary Judgment (D/E #25).  In that motion, Accident Fund argues that it was not plaintiff's employer and, consequently, it could not be liable to plaintiff under FMLA.  Accident Fund also argues that it is a private entity that cannot, on its own, deprive plaintiff of his First Amendment rights.

On May 22, 2009, plaintiff filed a response to Accident Fund's motion (D/E #30).  In that response, plaintiff argues that his second amended complaint sets forth causes of action for common law bad faith, intentional infliction of emotional distress, breach of contract, obstruction of plaintiff's access to the courts, and declaratory relief.  Plaintiff also argues the worker's compensation scheme does not immunize an insurance carrier from wrongdoing independent from its claims handling and that the allegations presented by plaintiff go far beyond a claim of delay or simple termination of benefits.  Plaintiff notes that, at this stage, he is not alleging that Accident Fund contributed to the FMLA deprivation unless it is discovered that Accident Fund maintained some sort of contractual obligation.  Plaintiff further argues that, with respect to his access to the courts claim, he never claimed that Accident Fund acted alone and that a citizen's right to access the courts is violated when an external source, especially two separate corporate entities, conspire to hinder the judicial process from which the individual is

seeking redress.  Plaintiff also argues that summary judgment would be premature because the parties have not yet engaged in discovery.

On May 28, 2009, Accident Fund filed a reply to plaintiff's response (D/E #33).  In that reply, Accident Fund argues that the tort claims mentioned in plaintiff's brief were not part of his second amended complaint and that, as a serial litigator, plaintiff should be held to a higher standard than a normal *pro se* litigant.  Accident Fund further argues that plaintiff waived his FMLA claim with respect to Accident Fund and plaintiff admits that Accident Fund is not a state actor.[4]

On July 13, 2009, defendants Barr, Bashore and DeLuca filed a Motion to Dismiss and/or for Summary Judgment (D/E #68).  In that motion, those three defendants argue that plaintiff's allegations against them pursuant to the FMLA are improper because they were not plaintiff's employers.  Barr, Bashore and DeLuca also argue that they are wholly private actors and, therefore, they did not deprive plaintiff of his access to the courts.

Plaintiff did not file a response to Barr, Bashore and DeLuca's Motion to Dismiss and/or for Summary Judgment and the time for filing a response has passed.


**III. Discussion**

---

[4]On August 4, 2009, plaintiff filed, without leave of the court, an untimely and inappropriate second response to Accident Fund's motion (D/E #79).  Accident Fund filed a reply to that response (D/E #84) and plaintiff filed a rebuttal to that reply (D/E #86).  However, given that the second response was untimely, inappropriate and filed without leave of the court, this court will not consider them.  Moreover, this court would also note that the parties merely reiterate and repeat their earlier arguments in those later filings.

As a preliminary matter, this court would note that, while plaintiff states in his response that his causes of actions include common law bad faith, intentional infliction of emotional distress and breach of contract, those state claims should not be considered because they are not alleged in plaintiff's second amended complaint.  Filings by *pro se* litigants are entitled to a liberal construction, Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir. 1999), but plaintiff's second amended complaint clearly provides that he has only two claims: a claim that defendants violated the FMLA and a claim that defendants denied him access to the courts.  Those two claims are identified as two separate counts and are the only two counts alleging any claims against defendants.[5]

Moreover, even if plaintiff did allege any claims under state law, the district court should decline to exercise supplemental jurisdiction over them.  As discussed below, this court recommends that plaintiff's federal claims be dismissed and, because this court makes that recommendation, it also recommends that the district court decline to exercise jurisdiction over and dismiss any state law claims.  See Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009) (quoting Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir.1992)) ("Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a

---

[5]As described above, Count I of plaintiff's second amended complaint discusses the court's jurisdiction and the identity of the parties.

-7-

claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.").

**A. FMLA claims**

In Count II of his second amended complaint, plaintiff alleges that defendants violated the FMLA when he was denied leave and fired.  The FMLA does entitle an "eligible employee" to up to twelve weeks of leave per year if the employee has a "serious health condition" that prevents the employee from performing the functions of her job.  29 U.S.C. § 2612(a)(1)(D); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).  Likewise, an employee who utilizes FMLA leave is entitled to be restored to her position, or an equivalent one, when she returns from the leave, 29 U.S.C. § 2614(a)(1), and an employer may not discriminate or retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2).  In particular, an employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); Arban v. West Publ'g Corp., 345 F.3d 390, 403 (6th Cir.2003).

However, while plaintiff alleges some acts prohibited by the FMLA, he has failed to state a claim against defendants Accident Fund, Barr, Bashore, and DeLuca for violation of the FMLA because they are not his employer.  As described in plaintiff's second amended complaint, he was employed by Louisiana Homes and it was defendants Lillia and Elisa Dodson, on behalf of Louisiana Homes, who denied him leave and terminated his employment.  (Second Amended Complaint, ¶¶

-8-

In his response to Accident Fund's motion, plaintiff concedes that he does not have an FMLA

claim against Accident Fund and, while he did not file a response to defendants Barr, Bashore

and DeLuca's motion, their arguments are the same.

Employers who are subject to and are shown to violate the FMLA are liable to their

employee for damages.  29 U.S.C. § 2617(a)(1); see, *e.g.*, Bryant v. Dollar Gen. Corp., 538 F.3d

394, 397 & n. 1 (6th Cir. 2008) (noting damages awarded pursuant to 29 U.S.C. § 2617).  Here,

however, defendants Accident Fund, Barr, Bashore, and DeLuca were not plaintiff's employer

and he has failed to state a claim against them pursuant to the FMLA.

## B. Access to the courts claims

In Count III of plaintiff's second amended complaint, he alleges that defendants denied

him his constitutional right to access the courts and, while plaintiff does not expressly identify it

as such, it appears that plaintiff's claim of deprivation of rights is made pursuant to 42 U.S.C. §

1983.  42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable. For the purposes of this section, any Act of Congress

-9-

>       applicable exclusively to the District of Columbia shall be
>       considered to be a statute of the District of Columbia.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108

S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted).  One acts under color of state law when

one exercises power "possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299,

326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).  If a defendant's conduct satisfies the state-action

requirement of the Fourteenth Amendment, then the defendant is considered to be acting under

color of state law.  West, 487 U.S. at 49; Lugar v. Edmondson Oil Co., 457 U.S. 922, 928, 102

S.Ct. 2744, 73 L.Ed.2d 482 (1982).  Therefore, the court must determine whether defendants

Accident Fund, Barr, Bashore and DeLuca performed such a state action.

Defendants Accident Fund, Barr, Bashore and DeLuca are not government employees or

officials.  They are private parties.  In certain circumstances, however, the actions of even

private parties may be deemed to be state action "when the conduct causing the deprivation of a

federal right may be fairly attributable to the state." Revis v. Meldrum, 489 F.3d 273, 289 (6th

Cir. 2007) (quoting Lugar v. Edmundson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d

482 (1982)).  This determination involves a two-part inquiry.  "First, the deprivation in question

-10-

must be caused by the exercise of some right or privilege created by the State or by a rule of

conduct imposed by the state or by a person for whom the State is responsible." Revis, 489 F.3d

at 289 (quoting Lugar, 457 U.S. at 937).  And second, "the party charged with the deprivation

must be a person who may fairly be said to be a state actor." Revis, 489 F.3d at 289 (quoting

Lugar, 457 U.S. at 937).

    For a private actor-defendant's acts to be considered state action, the "actions [must] so

approximate state action that they may be fairly attributed to the state." Lansing v. City of

Memphis, 202 F.3d 821, 828 (6th Cir. 2000).  The United States Court of Appeals for the Sixth

Circuit uses three tests to determine if a private actor-defendant's conduct amounts to state

action.  These are commonly referred to as: 1) the public-function test; 2) the state-compulsion

test; and 3) the symbiotic relationship or nexus test. Boykin v. Van Buren Twp., 479 F.3d

444,452 (6th Cir. 2007) (quoting Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir. 2003));

Lansing, 202 F.3d at 828.   Each of those tests will be examined below and, as discussed below,

it is clear that none are satisfied in this case and that defendants are not state actors subject to

liability under § 1983.

**1. Public Function Test**

    Under the  public-function test, "a private party is deemed a state actor if he or she

exercised powers traditionally reserved exclusively to the state." Chapman, 319 F.3d at 833.

This test has typically been interpreted very narrowly, and has been utilized to find state action

-11-

on the part of a private actor only in rare circumstances.  Chapman, 319 F.3d at 833-34.  The few examples of state action under this public-function test illustrate its lack of expansive utilization by the courts.  See, *e.g.*, Flagg Bros. v. Brooks, 436 U.S. 149, 157-58, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (holding elections is public function); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352-53, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (eminent domain is public function); Marsh v. Alabama, 326 U.S. 501, 505-09, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company-owned town is public function).

Importantly, when a court addresses the issue of state action under the public-function test, it must conduct a historical analysis of the activity in question to determine whether the activity truly is one that has been traditionally and exclusively performed by the state.  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003); Ellison v. Garbarino, 48 F.3d 192, 196 (6th Cir. 1995) ("Courts that have addressed this issue [public-function test] have typically required some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state.").  The Sixth Circuit has also made it clear that the burden is on the plaintiff to make this showing of historical evidence or argumentation to the court deciding the issue of state action.  Straub v. Kilgore, 100 Fed. Appx. 379, 385 (6th Cir. 2004) (quoting Wittstock, 330 F.3d at 902); Wittstock, 330 F.3d at 902; Ellison, 48 F.3d at 196.

Here, plaintiff has not made any argument suggesting that defendants' alleged actions were ones traditionally and exclusively performed by the state and there is no showing of

historical evidence with respect to the public-function test.  Therefore, this court finds that defendants should not be considered state actors under the public-function test.

### 2. State-Compulsion Test

The state-compulsion test "requires that the state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'"  Wilcher v. City of Akron, 498 F.3d 516, 519 (6th Cir. 2007) (quoting Wolotsky, 960 F.2d at 1335).  For the activities of the private actor to constitute state action under this test, more is required than merely the approval or acquiescence of the state in the decisions or actions of the private actor.  See Blum v. Yaretsky, 4557 U.S. 991, 1004 (1982).

In this case, plaintiff has neither argued nor alleged that defendants were coerced or encouraged by the state into committing any of the alleged acts against plaintiff.  This court therefore finds that the state-compulsion test for state action is not satisfied in this case.

### 3.  Symbiotic Relationship or Nexus Test

The third of the state-actions tests is the symbiotic relationship or nexus test.  Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter maybe fairly treated as that of the state itself."  Wolotsky, 960 F.2d 1331, 1335 (6th Cir. 1992).  Determinations of state action under the nexus test necessarily depend on the unique facts and

-13-

circumstances presented by each individual case.  "The cases establish no clear standard for

identifying a 'sufficiently close nexus.'"  Lansing v. City of Memphis, 202 F.3d 821, 830 (6th

Cir. 2000); see also Lugar v. Edmundson Oil Co., 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d

482 (1982) (state-action determination is a "necessarily fact-bound inquiry").  However, the

Supreme Court and the Sixth Circuit have provided some guidance to the inquiry.  Certain

factors have been deemed insufficient, in and of themselves, to establish the required nexus

between the private actor's complained-of conduct and the State.  Extensive state regulation of a

private entity's operations does not establish state action via the nexus test.  See, e.g.,

Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Adams v.

Vandemark, 855 F.2d 312 (6th Cir. 1988); Crowder v. Conlan, 740 F.2d 447 (6th Cir. 1984).

Public funding of nearly all of the private actor's activities, as well as the private actor's use of

public property, are similarly insufficient to establish the required nexus.  See, e.g., Blum v.

Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); Wolotsky, 960 F.2d at 1336;

Crowder, 740 F.2d at 450, 453.  The minority presence of public officials on the private actor's

decision-making board also does not satisfy the nexus test for state action.  See, e.g., Jackson v.

Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); Lansing, 202 F.3d

at 831; Crowder, 740 F.2d at 447.  Also, the utilization of public services by private actors does

not by itself establish the requisite nexus for state action.  See, e.g., Am. Mfrs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); Ellison v. Garbarino, 48 F.3d 192

-14-

(6th Cir. 1995). Furthermore, the mere existence of a contract between a governmental agency and a private party is insufficient to create state action. See, *e.g*, Revis v. Meldrum, 489 F.3d 273, 292 (6th Cir. 2007); McCarthy v. Middle Tennessee Elec. Membership Corp., 466 F.3d 399, 412 (6th Cir. 2006); Simescu v. Emmet County Dept. of Soc. Services, 942 F.2d 372, 375 (6th Cir.1991).

Importantly, it should also be remembered that for this state-action test to be satisfied, the required nexus must be found between the specific complained-of actions of the private actor and the involvement or influence of the State. See Wolotsky, 960 F.2d at 1335 ("[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983."); see also Straub v. Kilgore, 100 Fed. Appx. 379, 385 (6th Cir. 2004) ("In order to show state action, the state must be 'intimately involved' with the challenged conduct."); Crowder, 740 F.2d at 453 (explaining that plaintiff must demonstrate nexus between the specific challenged action and the governmental involvement alleged to provide the basis for a finding of state action).

Here, under the guidance and precedent of the Sixth Circuit Court of Appeals relating to this particular state-action test, this court finds that plaintiff has fail to establish a sufficient nexus between the alleged acts of defendants and the involvement of the state of Michigan to consider Tursak's actions to be state action. While plaintiff alludes to former defendant, and alleged co-conspirator, Louisiana Homes receiving government funding, there is nothing to

-15-

indicate that the state had any influence or role in the specific actions defendants allegedly took with respect to plaintiff's claims for unemployment benefits or worker's compensation benefits. Therefore, this court therefore finds that the symbiotic relationship or nexus test for state action is not satisfied in this case.

Given that defendants' alleged actions do not satisfy any of the three tests used to determine if a private actor-defendant's conduct amounts to state action, they are not state actors and the plaintiff's claim against them made pursuant to § 1983 should be dismissed.

## IV. Conclusion

For the reasons discussed above, this court recommends that defendants' motions be **GRANTED** and that plaintiff's remaining claims be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

-16-

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan_____
Virginia M. Morgan
United States Magistrate Judge

Dated: October 16, 2009

_____

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Harold Dean Roberts, Jr. via the Court's ECF System and/or U. S. Mail on October 16, 2009.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan